**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Yeeli Aran, et al., | No. CV10-0862 PHX DGC |
| Plaintiffs, | |
| vs. | **ORDER** |
| Janet Napolitano, et al., | |
| Defendants. | |

This order concerns Plaintiffs' and Defendants' cross-motions for summary judgment. Docs. 16, 19.  The motions have been fully briefed.  Docs. 16-19, 23-29.  For the reasons stated below, the Court will deny Plaintiffs' motion and grant Defendants' motion.[1]

**I.    Background.**

On April 19, 2010, Plaintiffs Yeeli Aran and Itay Shimon Elnatan filed a declaratory action to set aside revocation of the Petition for Alien Relative ("I-130") that Aran filed for Elnatan.  Doc. 1.  The final decision, made by the Board of Immigration Appeals ("BIA"), adopted the findings made by the United States Citizenship and Immigration Services ("CIS").  *Id.*  The facts that follow are based on the parties' statements of facts submitted with their motions for summary judgment (Docs. 17, 18), the parties' responses to opposing statements of facts (Docs. 24, 25, 28), and the record below (Docs. 14-1, 14-2, 14-4, 18-1).

Plaintiff Aran is a United States citizen, and Plaintiff Elnatan is a citizen of Israel. Doc. 17  ¶¶ 1, 2.  Elnatan was granted a visitor B-2 visa and entered the United States in

---

[1] Plaintiffs' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

2003.  Doc. 18 ¶ 1.  On May 12, 2005, Immigration and Customs Enforcement ("ICE") issued Elnatan a Notice to Appear ("NTA") regarding alleged violations of his visa conditions, violations that served as the basis for removal proceedings that formally commenced at some time after issuance of the NTA.  Doc. 18 ¶ 3; Doc. 28 at 1; Doc. 18-1 at 4 n.1.  Plaintiffs married on May 15, 2005 in Niagara Falls, New York.  Doc. 17 ¶ 4.  Plaintiffs do not deny that Elnatan was served with the NTA shortly before the marriage.  *See* Doc. 27 at 3.  Plaintiffs assert, however, that they had planned to marry prior to the issuance of the NTA (Doc. 28 ¶ 15) and that they sought advice from counsel in April 2005 "regarding their prospective I-130 and I-485 petitions based on their upcoming marriage" (Doc. 27 at 3).  The record contains a letter from a New York City attorney dated May 5, 2009, stating that Plaintiffs contacted him in April 2005 to "advise and represent them regarding their prospective Petition for Alien Relative, Application for Adjustment of Status and related petitions."  Doc. 14-1 at 72.  The record also contains a letter from the same attorney and law firm dated April 28, 2005, addressed to Elnatan as the firm's client "in connection with the preparation and submission of a Petition for Alien Relative, Application for Adjustment of Status and related petitions."  Doc. 14-1 at 73-74.

On June 6, 2005, Aran filed an I-130 Petition for Elnatan, which was approved on November 9, 2005.  Doc. 18 ¶¶ 4, 5.  On January 10, 2006, Elnatan filed an Application for Adjustment of Status to Legal Permanent Resident ("I-485").  *Id.* ¶ 6.  In connection with that application, Plaintiffs were interviewed twice by the government – on or about October 31, 2006 in Buffalo, New York, and on or about September 5, 2008 in Phoenix, Arizona.  *Id.* ¶¶ 7-8.  During these interviews, one or both Plaintiffs made certain statements regarding their relationship after marriage that were either false or inconsistent, including their reasons for living geographically apart for most of their married life; Aran's possible relationship with another man, Shay Rotem, whom Aran incorrectly characterized as a female co-worker (Doc. 14-4 at 62); Aran's travel plans to Israel immediately after the second interview, more specifically the duration of the trip and whether she was going alone or with Shay Rotem; the frequency of visits between Plaintiffs; and Aran's places of abode.  Doc. 18 ¶¶ 10-31.

On December 30, 2008, the CIS issued a Notice of Intent to Revoke the I-130 ("NOIR") because CIS concluded that Plaintiffs' marriage was not bona fide and was contracted "solely for the purpose of conferring immigration benefits upon the beneficiary." *Id.* ¶¶ 32, 33.  Plaintiffs responded by providing additional exhibits documenting the bona fides of their marriage, including joint account statements, joint tax returns, leases, wedding pictures, wedding cards, and letters from Aran's father and Aran regarding the strength of the marriage, along with partial explanations for prior testimonial inconsistencies. *Id.* ¶¶ 34-47; Doc. 14-1 at 7.  Among the explanations was a letter from Aran to her attorney stating that Shay Rotem was "a very good friend of [Aran's] from Israel" with whom she grew up and whom she knew since they attended school together. Doc. 14-2 at 70. The CIS revoked the I-130 on April 7, 2009.  Doc. 14-1 at 81.

Plaintiffs appealed to the BIA on the same day, and the BIA dismissed the appeal on February 22, 2010.  Doc. 18 ¶¶ 55, 56.  In its decision, the BIA concluded that Plaintiffs had failed to prove that the marriage was bona fide by a preponderance of the evidence and, therefore, that there was "good and sufficient cause to revoke the visa petition." Doc. 18-1 at 4-5.  In its rationale, the BIA highlighted the Plaintiffs' false and inconsistent statements, and also noted that accounts of Plaintiffs' visits to see each other and time spent together "are basic facts that a couple in a married relationship should know about each other." *Id.* at 5.

In their complaint and their motion for summary judgment, Plaintiffs allege that the CIS decision to revoke the I-130 – affirmed by the BIA – was arbitrary, capricious, and not in accordance with the law because it was rooted in circumstances and events after the inception of marriage.  Doc. 1 at 6; Doc. 16 at 1.  Defendants argue that they are entitled to summary judgment because "substantial evidence . . . support[s] the agency's decision to revoke the I-130." Doc. 19 at 2.

**II.    Legal Standards.**

    **A.    Summary Judgment.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which

1   it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

2   *Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed

3   in the light most favorable to the nonmoving party, shows "that there is no genuine issue as

4   to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

5   Civ. P. 56(c)(2).

6        **B.    Revocation of Visa Petition.**

7        A decision by the CIS or BIA to revoke a visa petition will be reversed if it is

8   "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . or

9   if its factual findings are unsupported by substantial evidence." *Love Korean Church v.*

10  *Chertoff*, 549 F.3d 749, 753-54 (9th Cir. 2008) (quoting 5 U.S.C. § 706(2)(A) and *Mester*

11  *Mfg. Co. v. INS*, 879 F.2d 561, 565 (9th Cir. 1989)).  Factual findings made by an agency

12  may not be overturned unless "the evidence presented would *compel* a reasonable finder of

13  fact to reach a contrary result." *Family Inc. v. United States Citizenship & Immigration*

14  *Servs.*, 469 F.3d 1313, 1315 (9th Cir. 2006) (emphasis in original).

15       Under 8 U.S.C. § 1155, CIS can revoke an I-130 petition for "good and sufficient

16  cause," a standard that is satisfied when "the evidence of record at the time the decision was

17  issued . . . warranted . . . [a] denial of the petition," *Love Korean Church*, 549 F.3d at 754 n.3

18  (internal quotation marks and citation omitted) (alteration in original), and the government

19  meets the "burden of producing substantial evidence supporting its determination,"

20  *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305, 1309 (9th Cir. 1984); *accord*

21  *Oropeza-Wong v. Gonzales*, 406 F.3d 1135, 1139 (9th Cir. 2005) (concluding that "the BIA's

22  rejection of [a removal challenger's claim of good faith marriage] is supported by substantial

23  evidence").  The court reviews the revocation as a denial of the I-130 in the first instance.

24  *Love Korean Church*, 549 F.3d at 754 n.3.

25       Judicial review is "limited to the reasoning articulated by the agency," and the court

26  cannot reject evidence that the agency itself did not reject. *Id.* at 754-55.  Moreover, a visa

27  petitioner has the burden to prove entitlement to the visa using the appropriate evidentiary

28  standard, and "any inconsistency must be resolved against the petitioner." *See id*.  In some

circumstances, "[d]oubt cast on any aspect of the petitioner's proof *may* . . . lead to a reevaluation of the reliability and sufficiency of the remaining evidence offered in support of the visa petition." *Id.* at 754 (citation omitted) (alterations and emphasis in original).

### C.    Bona Fides of Marriage.

When deciding whether a visa petitioner entered into marriage in good faith, "the sole inquiry . . . is whether [the bride and groom] intended to establish a life together at the time of marriage." *Damon v. Ashcroft*, 360 F.3d 1084, 1090 (9th Cir. 2004) (citing *Bark v. INS*, 511 F.2d 1200, 1202 (9th Cir. 1975)). "The concept of establishing a life as marital partners contains no federal dictate about the kind of life that the partners may choose to lead. Any attempt to regulate their life styles . . . in the guise of specifying the requirements of a bona fide marriage would raise serious constitutional questions." *Bark*, 511 F.2d at 1201. Notwithstanding the foregoing, a couple's conduct after marriage is relevant, but "only to the extent that it bears upon their subjective state of mind at the time they were married." *Id.* at 1202. For example, proof of separation cannot by itself support a conclusion that a marriage was not bona fide because a court cannot be "reasonably assured that it is more probable than not that couples who separate after marriage never intended to live together." *Id*.

### III.   Discussion.

The CIS decision to revoke the I-130 petition was set forth in a seven-page, single-spaced statement. Doc. 14-1 at 82. The BIA affirmed the CIS decision "for reasons stated in the [CIS] decision," concluding that Plaintiffs had failed to prove the bona fides of their marriage by a preponderance of the evidence. Doc. 18-1 at 5.

The BIA conclusion was not arbitrary and capricious. Because the BIA reached its decision for reasons stated by CIS, the Court will look to the CIS decision in evaluating the reasonableness of the agency's conclusion.

CIS noted that the Plaintiffs were married after they received notice that Mr. Elnatan was being placed in removal proceedings. Doc. 14-1 at 82. It then reviewed evidence that Plaintiffs did not live together for a substantial period of time after their marriage:

Furthermore, you have spent what appears to be the entirety of your marriage

living separately from Mr. Elnatan.  You married Mr. Elnatan in May of 2005 while he was in removal proceedings and then subsequently departed the United States without Mr. Elnatan in November of 2005.  You re-entered the U.S. on September 08, 2006, and resided apart from Mr. Elnatan in Iowa until the middle of 2007, at which time you again departed the United States without Mr. Elnatan.  You re-entered the U.S. on September 01, 2007, and resided apart from Mr. Elnatan in San Francisco, where you rented a one-bedroom apartment with Shay Rotem.  You assert that you continued to live apart from Mr. Elnatan after your marriage because of employment related to his company.  However, as previously mentioned, this claim has been discredited by your own employment application and resume.

*Id*. at 85.

CIS identified numerous misrepresentations and inconsistencies in the sworn statements made by Plaintiffs during their 2008 interview.  These include Ms. Aran's statements about residing in Arizona; inconsistent statements between Plaintiffs on the frequency of her visits to Arizona and his visits to San Francisco; false claims regarding Ms. Aran's ongoing employment for Mr. Elnatan's company; Ms. Aran's false claim that she lived with co-workers; false claims regarding Shay Rotem's gender; inconsistent statements on Ms. Aran's Israel travel plans; Ms. Aran's joint lease with Mr. Rotem in San Francisco; Ms. Aran's failure to disclose her travels to Mexico with Mr. Rotem; Ms. Aran's failure to disclose her employment with other companies in San Francisco; Ms. Aran's claim in employment applications that she was no longer employed with Mr. Elnatan's company; and other inconsistencies.  *Id*. at 82-85.

CIS also concluded that Plaintiffs' affirmative evidence of their ongoing relationship was not credible.  For example, the Arizona rental agreement submitted by Plaintiffs as evidence of their cohabitation covered the time period when Ms. Aran was renting an apartment with Shay Rotem in San Francisco.  *Id*. at 85-86.  The electric utility statement that listed both Plaintiffs as account holders was for an address where Ms. Aran never resided and was issued when she had been out of the country for several months.  *Id*. at 86.  Other documents that purported to show Plaintiffs living together in Arizona were undercut by the fact that Ms. Aran has never lived in Arizona.  *Id*.  Documents showing Plaintiffs living together in New York covered a period when Ms. Aran was living in Iowa.  *Id*.

1    This is not a case where the BIA and CIS concluded that the marriage was a sham
2  because of the manner in which Plaintiffs lived after their marriage, as the Ninth Circuit
3  condemned in *Bark*.  Rather, CIS found that Plaintiffs had lied repeatedly in the sworn
4  testimony to the marriage, provided inconsistent information about their marriage, and
5  provided documentary evidence contrary to other facts established by the agency.  Plaintiffs'
6  lack of credibility cast serious doubt on the reliability of their other evidence.  *Love Korean*
7  *Church*, 549 F.3d at 754.  The adverse credibility determinations of CIS were based on
8  specific, cogent reasons, as required in *Oropeza-Wong*, 406 F.3d at 1148.

9    As noted above, the BIA and CIS can revoke an I-130 petition for "good and
10  sufficient cause," a standard that is satisfied when the evidence of record at the time the
11  decision was issued warranted a denial of the petition.  *Love Korean Church*, 549 F.3d at 754
12  n.3.  The Court concludes that the evidence before the BIA and CIS warranted the decision
13  in this case.  The government has satisfied its burden of producing substantial evidence to
14  support the decision.  *Tongatapu Woodcraft Hawaii, Ltd.*, 736 F.2d at 1309; *Oropeza-Wong*,
15  406 F.3d at 1139.

16  **IT IS ORDERED:**

17  1.    Plaintiffs' motion for summary judgment (Doc. 16) is **denied**.

18  2.    Defendants' motion for summary judgment (Doc. 19) is **granted**.

19  3.    The Clerk shall terminate this matter.

20  DATED this 24th day of November, 2010.

David G. Campbell
United States District Judge